IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 6:22-cv-213 |
| | ) | |
| KARLA R. WELCH; KARLA R. WELCH, LLC; | ) | |
| and KWIK SERVICES, LLC; | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

The United States of America, for its complaint against Karla R. Welch, Karla R. Welch,

LLC, and Kwik Services, LLC, alleges the following:

1.    This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, and anyone

in active concert or participation with them, from:

a.  acting as federal tax return preparers or requesting, assisting in, or
directing the preparation or filing of federal tax returns, amended
returns, or other related documents or forms for any person or entity
other than themselves;

b.  preparing or assisting in preparing federal tax returns that they know
or reasonably should know would result in an understatement of tax
liability or the overstatement of federal tax refund(s) as penalized by
26 U.S.C. § 6694;

c.  owning, operating, managing, working in, investing in, providing
capital or loans to, receiving fees or remuneration from, controlling,
licensing, consulting with, or franchising a tax return preparation
business;

d.  training, instructing, teaching, and creating or providing cheat sheets,
memoranda, directions, instructions, or manuals, pertaining to the
preparation of federal tax returns;

      e.   maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

      f.   engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

      g.   engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

This action also seeks, under 26 U.S.C. § 7402, an order requiring Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC to disgorge to the United States the gross receipts that Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, received (in the form of tax preparation fees) for the preparation of federal tax returns making false and/or fraudulent claims.

## Authorization

2.     This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## Jurisdiction and Venue

3.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Karla R. Welch resides in this judicial district and a substantial part of the activities giving rise to this suit occurred in this judicial district.

## Defendants

5.     Karla R. Welch resides in Orlando, Florida.  Welch has been preparing tax returns for compensation since at least 2011.

6. On or about November 17, 2011, Welch incorporated Karla R. Welch, LLC, in Florida. Welch is the sole member of Karla R. Welch, LLC, and serves as the registered agent.

7. On or about November 14, 2013, Welch incorporated Kwik Services, LLC, in Florida. Welch is the sole member of Kwik Services, LLC, and serves as the registered agent.

8. In 2014, Karla R. Welch, individually and through Karla R. Welch, LLC and Kwik Services, LLC, began operating her own tax preparation business under the name Kwik Services, LLC.

9. Welch prepares tax returns for compensation. In addition to personally preparing tax returns for compensation, Welch, as the sole owner of Karla R. Welch, LLC and Kwik Services, LLC, employs individuals, directly or through Karla R. Welch, LLC and Kwik Services, LLC, who prepare tax returns for compensation.

## Background

10. LBS Tax Services ("LBS") began in 2008 as a tax return preparation business in Orlando, Florida operated by Walner Gachette. In 2011, Gachette began franchising the LBS name through Loan Buy Sell, Inc., a corporation organized in the State of Florida, to his employees in order to broaden his revenue base. On November 16, 2016, the United States District Court for the Middle District of Florida enjoined Gachette from preparing federal tax returns and owning, operating, and franchising a tax preparation business, and ordered him to disgorge his ill-gotten gains. *See United States v. Walner Gachette*, 6:14-cv-1539 (M.D. Fla.).

11. Welch began working at LBS in 2011. In 2012 and 2013, LBS employed Welch as a District Sales Manager ("DSM"), which entailed preparing tax returns and managing a tax preparation store owned by Jean Demesmin and located in Lakeland, Florida. The United States filed suit against Demesmin on September 23, 2014. *See United States v. Demesmin, et al.*, 6:14-

cv-1537 (M.D. Fla.)  On December 11, 2015, pursuant to a stipulation between the parties, this Court entered a preliminary injunction against Demesmin, barring him from preparing tax returns and owning and operating a tax preparation business. On September 7, 2016, the Court entered a permanent injunction, with the same terms, and a judgment of disgorgement against Demesmin.

12.     In late 2013 or early 2014, Welch became the owner of two formerly Demesmin-owned tax preparation stores, the store she previously managed in Lakeland and another store located in Longwood, Florida.  Welch also became the owner of another LBS tax preparation store, located in Winter Haven, Florida, formerly owned by Kerny Pierre-Louis.  The United States filed suit against Pierre-Louis on September 23, 2014, and the Court entered a permanent injunction barring Pierre-Louis from preparing tax returns and owning and operating a tax preparation business, and an order requiring him to disgorge his ill-gotten gains, on June 9, 2016. *See United States v. Pierre-Louis*, 6:14-cv-1536 (M.D. Fla.).

13.     Since 2014, Welch, individually or through Karla R. Welch, LLC and Kwik Services, LLC, has owned tax preparation stores at 12 separate locations in Florida, Georgia, and North Carolina.  Welch, individually or through these entities, has owned up to 9 tax preparation stores at one time. Welch owned and operated 6 tax preparation stores in 2014 (in Lakeland, Longwood, Winter Haven, Casselberry, and Clermont, Florida, and Dunn, North Carolina); 6 tax preparation stores in 2015 (in Lakeland, Winter Haven, Casselberry, Clermont, and Ocoee, Florida, and Albany, Georgia); 9 tax preparation stores in 2016 (in Lakeland, Winter Haven, Casselberry, Clermont, Ocoee, Auburndale, Kissimmee, and Winter Garden, Florida, and Albany, Georgia); 5 tax preparation stores in 2017 (in Lakeland, Winter Haven, Clermont, and Winter Garden, Florida, and Albany, Georgia); 3 tax preparation stores in 2018 (in Lakeland,

Winter Garden, and Winter Haven, Florida); 2 tax preparation stores in 2019 (in Winter Garden and Winter Haven, Florida); and 2 tax preparation stores in 2020 (in Winter Garden and Winter Haven, Florida).

14.    Karla R. Welch, LLC and Kwik Services, LLC prepared at least the following number of tax returns in 2014, 2015, 2016, 2017, 2018, 2019, and 2020:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC[1] |
|---|---|---|---|---|
| 2014 | 893 | 890 | 99.7% | 684 (77%) |
| 2015 | 1,231 | 1,228 | 99.8% | 999 (81%) |
| 2016 | 1,614 | 1,605 | 99.4% | 1,233 (76%) |
| 2017 | 539 | 527 | 98% | 427 (79%) |
| 2018 | 477 | 471 | 99% | 377 (79%) |
| 2019 | 508 | 491 | 96.7% | 415 (82%) |
| 2020 | 473 | 451 | 95% | 385 (81%) |
| 2021 | 437 | 403 | 92% | 303 (69%) |

**The Defendants' Activities**

15.    The Defendants prepare tax returns to generate bogus refunds for customers, enabling the Defendants to charge exorbitant fees and maximize profits at the expense of the United States Treasury.

16.    Many of the Defendants' customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. Customers often have no knowledge that the Defendants have prepared and filed false tax returns on their behalf.  For others, the Defendants mislead customers about what can "legally" be claimed on their tax returns, particularly with respect to various credits and deductions, and by promising customers

---

[1] The Earned Income Tax Credit, a refundable tax credit available to certain low-income working people in varying amounts based on the taxpayer's income, filing status, and claimed number of dependents.

thousands of dollars of (illegal) refunds to convince them to have the Defendants prepare their tax returns.

17.    The Defendants make false claims on tax returns, particularly on the forms attached to those returns, in order to improperly increase customers' refunds.  After completing the returns, the Defendants falsely tell the customers that these forms legally increased the customers' refunds, and charge higher (and often undisclosed) fees due to the additional forms and the higher refund that the Defendants claimed.  The Defendants charge customers fees for preparing the return, fees for each tax form attached to the return, and fees for filing the return. These fees are all deducted from the customer's tax refund, often without the customer being told the amount that the Defendants actually charged for preparing the tax return.

18.    The Defendants request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits. Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

19.    The Defendants engage in unlawful tax return preparation practices including:

a.    Making false claims for the Earned Income Tax Credit;

b.    Circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

c.    Improperly claiming false filing status, such as Head of Household;

d.    Fabricating businesses and related business income and expenses;

e.    Fabricating itemized deductions, including for unreimbursed employee business expenses;

f.    Reporting inflated federal income tax withholdings that far exceed the amounts actually reported on customers' Forms W-2;

g.    Claiming education credits to which their customers are not entitled;

h.      Failing to identify the actual paid preparer of the tax return;

i.      Failing to provide customers with a copy of the completed tax return; and

j.      Charging deceptive and unconscionable fees.

**Phony Claims for the Earned Income Tax Credit
and Failure to Comply with Due Diligence Requirements**

20.     The Defendants prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC") often based on fabricated business income and expenses, bogus or improperly-claimed dependents, and/or false filing status.

21.     The EITC is a refundable tax credit available to certain low-income working people.  The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents.  *See* 26 U.S.C. § 32 and the accompanying Treasury Regulations. Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

22.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income.  For tax year 2015, the maximum EITC was $6,242 and was available to eligible individuals with three dependent children who earned income between $13,850 and $18,150.  The amount of the credit increases as income increases between $1 and $13,850, and decreases as income increases beyond $18,150.  Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range."

23.    Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit.  Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

24.    The Defendants falsify information to claim the maximum EITC for customers. For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

25.    Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC.  The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete."  Tax return preparers must also document their compliance with these requirements and keep that documentation for three years.

26.    The Defendants fail to comply with the due diligence requirements.  The Defendants show an intentional disregard for the tax laws and in particular for the due diligence requirements.

**Fabricated Schedule C Business Income and Expenses**

27.    The Defendants prepare tax returns reporting non-existent businesses on bogus Forms Schedule C.  On some of these returns, the Defendants report substantial business income, but little or no expenses.  On other returns, the Defendants report substantial expenses, but little or no income.  The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability.

<u>**Customer 1**</u>

28.    For example, Customer 1 of Lakeland, Florida had his 2015 and 2016 federal income tax returns prepared at the Kwik Services store in Lakeland.  Customer 1 was married in 2015 and 2016 and worked at Publix.  Customer 1 also earned around $3,000-$4,000 each of those years by cutting lawns for his parents' landscaping business.

29.    Customer 1 provided the tax return preparers at Kwik Services with his ID, social security information for his daughter and grandchild, and his Form W-2.  Customer 1 also discussed the income that he received for cutting lawns, but the preparers did not ask Customer 1 about specific amounts and did not request any records from Customer 1 showing how much income he earned.

30.    On the Schedule C attached to Customer 1's 2015 tax return, the preparer falsely reported that Customer 1 had a business called "Yard Man" through which through which Customer 1 received gross receipts totaling $381 and incurred expenses totaling $5,308. The

fabricated expenses included $75 for advertising, $3,475 for supplies, and $1,758 for utilities. Customer 1 did not lose money cutting lawns, did not incur these expenses, and did not provide these fabricated amounts to the preparer.

31.    The preparer also falsely claimed "Head of Household" filing status on Customer 1's 2015 tax return, when Customer 1 was married and told the preparer that he was married, as discussed in paragraph 103, *infra*.

32.    By falsely reporting on the Schedule C that Customer 1 lost $4,927 cutting lawns, the Kwik Services preparer falsely reduced Customer 1's taxable income, claimed an inflated EITC in the amount of $4,197, and claimed a bogus refund of $6,239 on Customer 1's 2015 tax return.

33.    On Customer 1's 2016 tax return, the preparer did not report any income that Customer 1 received for cutting lawns. The preparer also falsely claimed "Head of Household" filing status on Customer 1's 2016 tax return, when Customer 1 was married and told the preparer that he was married, as discussed in paragraph 103, *infra*. By failing to report all of Customer 1's income and falsely claiming Head of Household filing status on Customer 1's 2016 tax return, the Kwik Services preparer falsely reduced Customer 1's taxable income and claimed a bogus refund of $3,313 on Customer 1's 2016 tax return.

34.    When Customer 1's 2016 tax return was prepared, the Kwik Services preparer did not tell Customer 1 the amount of the refund that he would be receiving or the amount that Kwik Services would charge to prepare his tax return.  Customer 1 learned from the IRS that his tax return requested a refund around $1,800.  Customer 1 received a check from Kwik Services in an amount of around $600.  Customer 1 questioned an employee at Kwik Services about the $1,200

he did not receive, and was told that the fees Kwik Services charged him to prepare his 2016 tax return totaled around $1,200.

### Customers 2 and 3

35.     Customers 2 and 3 of Winter Haven, Florida, had their 2014 and 2015 federal income tax returns prepared at the Kwik Services store in Winter Haven.  Customers 2 and 3 had their tax returns prepared at Kwik Services after seeing several yard sign advertisements.  Customer 2 was employed as a home health care assistant until October 2015, and Customer 3 was employed as a plumber in 2014 and 2015.  Both of their employers issued them Forms W-2.  Neither Customer 2 nor Customer 3 owned or operated a business in 2014 or 2015.

36.     Both years, Customers 2 and 3 provided the preparer with copies of their Forms W-2, social security cards, and health care documents.

37.     On both the 2014 and 2015 tax returns, the Kwik Services preparer falsely reported that Customer 3 owned a home business.  On the Schedule C attached to the 2014 tax return, the preparer falsely reported that Customer 3 owned a business, not identified by name or type of business, through which he purportedly received $0 in gross receipts, but incurred $9,591 in expenses.  The fabricated expenses included $2,886 for car and truck expenses (based on purportedly driving 5,154 miles for the non-existent business), $3,254 for repairs and maintenance, and $3,451 for supplies.

38.     By falsely claiming that the non-existent business lost $9,591, the Kwik Services preparer falsely reduced the reported taxable income of Customers 2 and 3 and claimed a bogus refund of $3,547 on the 2014 tax return of Customers 2 and 3.

39.     The same preparer at Kwik Services also prepared the 2015 tax returns of Customers 2 and 3, although the tax return lists a different individual as the paid preparer.

40.     On the Schedule C attached to the 2015 tax return, the preparer falsely reported that Customer 3 owned a plumbing business through which he purportedly received $0 in gross receipts, but incurred $11,985 in expenses.  The fabricated expenses included $6,640 for car and truck expenses (based on purportedly driving 11,547 miles for the non-existent business), $325 for repairs and maintenance, $4,345 for supplies, $213 for meals and entertainment, and $462 for a cell phone.

41.     By falsely claiming that the non-existent business lost $11,985, the Kwik Services preparer falsely reduced the taxable income of Customers 2 and 3 and claimed a bogus refund of $2,060 on the 2015 tax return of Customers 2 and 3.

42.     Customers 2 and 3 did not know that the preparer reported on the tax returns that Customer 3 owned a business.  The preparer did not provide a copy of the 2015 tax return to Customers 2 and 3 that included the Schedule C reporting the false claims.

43.     Customers 2 and 3 were charged around $985 to have the 2015 tax return prepared, although the preparer did not inform Customers 2 and 3 how much they would be charged to have the tax return prepared until after the return was completed.   Customers 2 and 3 believed that the fee would be around $400.  After learning that the actual fee was much higher, Customers 2 and 3 asked the preparer why the fee was so high.  The preparer falsely replied that she had received a lot of education and training on how to prepare tax returns so that her services were worth more, that she had "put in everything the government can give you to get a better refund," and that a supervisor would review the return before it was electronically filed.

**Customer 4**

44.     Customer 4 of Casselberry, Florida had her 2014 and 2015 federal income tax returns prepared at the Kwik Services store in Casselberry.  Customer 4 and her three children

received social security disability income that provided the majority of the financial support that she received in 2014 and 2015.  Customer 4 also worked temporary jobs for wages but received less than $2,500 per year through employment.  Customer 4 also received additional income from neighbors at the hotel where she lived because she would babysit two children and drive those children to school when Customer 4 drove her own children to school.

45.    Customer 4 provided the preparer with Forms W-2 from the jobs where she worked, records showing her social security benefits, and records showing the amount of money she received for babysitting and driving her neighbor's children to school in 2014 and 2015. Customer 4 did not incur any expenses while babysitting her neighbor's children.

46.    On the Schedule C attached to Customer 4's 2014 tax return, the preparer falsely reported that Customer 4 received gross receipts for babysitting totaling $9,787 and incurred expenses totaling $697.  The fabricated expenses included $222 for advertising, and $475 for supplies.  The preparer falsely reported a profit in the amount of $9,090 on the tax return. Customer 4 did not receive this relatively large amount of income for babysitting, did not incur any expenses for babysitting, and did not provide these amounts to the preparer.

47.    The preparer also falsely claimed "Head of Household" filing status on Customer 4's 2014 tax return, when Customer 4 did not provide more than half of the income of her household, as she was mostly supported by social security benefits.  The preparer failed to report the social security benefits on Customer 4's 2014 tax return.

48.    By falsely reporting on the Schedule C that Customer 4 earned $9,090 babysitting, and falsely claiming "Head of Household" filing status, the Kwik Services preparer falsely claimed an inflated EITC in the amount of $4,106 and claimed a bogus refund of $3,739 on Customer 4's 2014 tax return.

49.      On Customer 4's 2015 tax return, the preparer falsely reported that Customer 4 received gross receipts for babysitting totaling $11,787 and incurred expenses for supplies totaling $335.  The preparer falsely reported a profit in the amount of $11,452 on the tax return. Customer 4 did not receive this relatively large amount of income for babysitting, did not incur any expenses for babysitting, and did not provide these amounts to the preparer.

50.      The preparer also falsely claimed "Head of Household" filing status on Customer 4's 2015 tax return, when Customer 4 did not provide more than half of the income of her household, as she again was mostly supported by social security benefits.  The preparer failed to report the social security benefits on Customer 4's 2015 tax return. The preparer also failed to report wages that Customer 4 earned from a job in 2015 in the amount of $1,800.

51.      By falsely reporting on the Schedule C that Customer 4 earned $11,452 babysitting, and falsely claiming "Head of Household" filing status, the Kwik Services preparer falsely claimed an inflated EITC in the amount of $4,550 and claimed a bogus refund of $4,192 on Customer 4's 2015 tax return.

52.      The IRS subsequently examined Customer 4's 2014 and 2015 tax returns, and determined that she owed $3,656.92 and $3,265.27, respectively, in tax and interest.

**Customer 5**

53.      Customer 5 of Winter Park, Florida had her 2014 and 2015 federal income tax returns prepared at the Kwik Services store in Casselberry, Florida.  Customer 5 worked at a hospital in 2014 and 2015.  Customer 5 also styled her friends' hair in her home, but did not do it to earn income or as a business.  Customer 5's son lived with her in 2014 and 2015, and her grandson occasionally stayed with her, but lived with his mother the majority of those years.

Customer 5 provided this information to the preparers and also provided the preparers with her Forms W-2.

54.     Customer 5 received wages from her job totaling $29,359 in 2014. On the Schedule C attached to Customer 5's 2014 tax return, the preparer falsely reported that Customer 5 received gross receipts for hair styling in the amount of $1,344, and incurred expenses totaling $5,991, for a purported loss in the amount of $4,647.  The fabricated expenses included $234 for advertising, $954 for car and truck expenses (for purportedly driving 1,704 miles to style hair), $2,797 for supplies, $638 for utilities, $493 for a cell phone, and $875 for "misc supplies dryers flat."  Customer 5 did not receive this income or incur these expenses and did not provide these amounts to the preparer. The preparer also falsely claimed Customer 5's grandson as a dependent on the 2014 tax return, as discussed in paragraph 101, *infra*.

55.     By falsely claiming that Customer 5 had a hairstyling business that lost $4,647, and claiming a bogus dependent, the Kwik Services preparer falsely reduced Customer 5's taxable income, claimed a fabricated EITC in the amount of $4,008 and a fabricated Child Tax Credit, and claimed a bogus refund of $7,166 on Customer 5's 2014 tax return.

56.     Customer 5 received wages from her job totaling $32,830 in 2015. On the Schedule C attached to Customer 5's 2015 tax return, the preparer falsely reported that Customer 5 received gross receipts for hair styling in the amount of $1,447, and incurred expenses totaling $6,002, for a purported loss in the amount of $4,555.  The fabricated expenses included $1,004 for car and truck expenses (for purportedly driving 1,748 miles to style hair), $2,877 for supplies, $703 for utilities, $542 for a cell phone, and $875 for "misc supplies dryers flat" (the same amount reported on her 2014 tax return).  Customer 5 did not receive this income or incur these expenses and did not provide these amounts to the preparer. The preparer also again falsely

claimed Customer 5's grandson as a dependent on the 2015 tax return, as discussed in paragraph 102, *infra*.

57.    By falsely claiming that Customer 5 had a hairstyling business that lost $4,555, and claiming a bogus dependent, the Kwik Services preparer falsely reduced Customer 5's taxable income, claimed a fabricated EITC in the amount of $3,407 and a fabricated Child Tax Credit, and claimed a bogus refund of $5,242 on Customer 5's 2015 tax return.

58.    The IRS subsequently examined Customer 5's 2014 and 2015 tax returns and determined that she owed tax in the amounts of $4,408 and $6,363, respectively.

### **Customer 6**

59.    Customer 6 of Kissimmee, Florida had his 2015 federal income tax return prepared at the Kwik Services store in Kissimmee, Florida.  Customer was employed full-time in 2015.  Customer 6 did not own a business and did not tell the preparer that he owned a business or that he received any income outside of his job.

60.    Customer 6 received wages from his job totaling $65,822 in 2015. On the Schedule C attached to Customer 6's 2015 tax return, the preparer falsely reported that Customer 6 owned an unnamed and unidentified home business through which Customer 6 received $0 in gross receipts but incurred expenses totaling $41,789.  The fabricated expenses included $9,703 for car and truck expenses (for purportedly driving 16,975 miles for a non-existent business), $15,874 for repairs and maintenance, and $16,212 for supplies.

61.    By falsely claiming that Customer 6 had a business that lost $41,789, the Kwik Services preparer falsely reduced Customer 6's taxable income, claimed a fabricated EITC in the amount of $2,414, and claimed a bogus refund of $9,906 on Customer 6's 2015 tax return.

**Customer 7**

62.     Customer 7 of Winter Garden, Florida had her 2014 and 2015 federal income tax returns prepared at the Kwik Services store in Clermont, Florida.  Customer 7 worked part-time in 2014 and 2015 and received social security disability income and child support for one of her children, which provided the majority of the financial support that she received in 2014 and 2015.  Customer 7 also received around $6,000 each year in additional income for babysitting occasionally on weekends.

63.     Customer 7 provided the preparer with Forms W-2 from the jobs where she worked, records showing her social security benefits, and informed the preparer that she received $50 each time that she babysat a child in 2014 and 2015.  Customer 7 did not incur expenses for babysitting.

64.     On the Schedule C attached to Customer 7's 2014 tax return, the preparer falsely reported that Customer 7 received gross receipts for babysitting totaling $10,857 and incurred expenses totaling $1,664.  The preparer thus falsely reported a profit in the amount of $9,193 on the tax return. Customer 7 did not receive this relatively large amount of income for babysitting, did not incur any expenses for babysitting, and did not provide these amounts to the preparer.

65.     The preparer also falsely claimed "Head of Household" filing status on Customer 7's 2014 tax return, when Customer 7 did not provide more than half of the income of her household, as she was mostly supported by social security benefits and child support.  The preparer failed to report the social security benefits on Customer 7's 2014 tax return.

66.     By falsely reporting on the Schedule C that Customer 7 earned $9,193 babysitting, and falsely claiming "Head of Household" filing status, the Kwik Services preparer

falsely claimed an inflated EITC in the amount of $5,410 and claimed a bogus refund of $5,189 on Customer 7's 2014 tax return.

67.     Similarly, on Customer 7's 2015 tax return, the preparer falsely reported that Customer 7 received gross receipts for babysitting totaling $9,989 and incurred expenses totaling $2,787.  The preparer falsely reported a profit in the amount of $7,202 on the tax return. Customer 7 did not receive this relatively large amount of income for babysitting, did not incur any expenses for babysitting, and did not provide these amounts to the preparer.

68.     The preparer also falsely claimed "Head of Household" filing status on Customer 7's 2015 tax return, when Customer 7 did not provide more than half of the income of her household, as she again was mostly supported by social security benefits and child support.  The preparer failed to report the social security benefits on Customer 7's 2015 tax return.

69.     By falsely reporting on the Schedule C that Customer 7 earned $7,202 babysitting, and falsely claiming "Head of Household" filing status, the Kwik Services preparer falsely claimed an inflated EITC in the amount of $5,450 and claimed a bogus refund of $5,552 on Customer 7's 2015 tax return.

**Customer 8**

70.     Customer 8 of Winter Haven, Florida had her 2015 federal income tax return prepared at the Kwik Services store in Auburndale, Florida.  Customer 8 was employed in 2015 and also babysat for income outside of work.  Customer 8 provided the preparer with a copy of her Form W-2 from her job and records of her income and expenses for babysitting.

71.     The preparer reported income and expenses for Customer 8's babysitting in the net amount of $14,953 on the Schedule C attached to Customer 8's 2015 tax return.

72.     The preparer, however, did not report the wage income that Customer 8 received from her job. Thus, the Kwik Services preparer underreported Customer 8's income, thereby claiming an inflated EITC in the amount of $5,548, and claimed a bogus refund of $5,069 on Customer 8's 2015 tax return.  Customer 8 did not receive a copy of the completed tax return.

73.     Customer 8's (bogus) refund was not deposited in her bank account. Nor was Customer 8 able to pick up a check at the Kwik Services store in Auburndale.  Instead, Customer 8 had to travel to a Wal-Mart located 50 miles from the Kwik Services store to receive her refund.  Kwik Services charged Customer 8 around $1,000 to prepare the return, and Customer 8 also had to pay a check-cashing fee to Wal-Mart to receive her refund.  The preparer did not inform Customer 8 that she would be charged $1,000 to have the return prepared, but instead told Customer 8 that the fee would be around $500.  When Customer 8 returned to Kwik Services to ask why the amount taken from her refund was more than what she expected, the Kwik Services employee falsely told Customer 8 that the IRS had taken additional fees from the refund.

**Customer 9**

74.     Customer 9 of Chambersburg, Pennsylvania had her 2019 federal income tax return prepared by a preparer at the Kwik Services store in Winter Haven, Florida.  Customer 9 was employed in 2019 and also did some cleaning and caretaking for an elderly individual outside of her employment.  Customer 9 provided the preparer with copies of her Form W-2 from her job, social security card, birth certificate, and identification.

75.     Customer 9 received $2,673 through her employment, and $150 per week for her cleaning and caretaking work (or around $7,800 for the year).

76.     On the Schedule C attached to the return, the preparer falsely reported that Customer 9 received $13,496 in income from her cleaning and caretaking work. The preparer

also falsely claimed that Customer 9 incurred expenses in the amount of $2,386, including $1,173 for supplies, $873 for gas, and $340 for a cell phone.  Thus, the preparer falsely reported Customer 9's profit from her cleaning and caretaking work as $11,110.

77.    As a result, the Kwik Services preparer reported an inflated total income amount of $13,783 on Customer 9's tax return, thereby claiming an inflated EITC in the amount of $5,190.  By claiming this inflated income and EITC, and the bogus education credit discussed in paragraph 128, *infra*, the preparer claimed a bogus refund of $6,036 on Customer 9's 2019 tax return.  The preparer did not review the completed tax return with Customer 9 but only provided Customer 9 with the expected amount of her refund.

**<u>Customer 10</u>**

78.    Customer 10 of Lakeland, Florida had her 2019 federal income tax return prepared by a preparer at the Kwik Services store in Winter Haven, Florida.  Customer 10 babysat in 2019 and earned $50-$75 per week (or around $2,600-$3,900 for the year).  Customer 10 did not incur any expenses for babysitting.  Customer 10 provided this information to the preparer on a form that she filled out prior to having the tax return prepared.  The preparer only questioned Customer 10 on what she did for income, not how much she made or whether she incurred expenses.

79.    On the Schedule C attached to the return, the preparer falsely reported that Customer 10 received $14,566 in income for babysitting. The preparer also falsely claimed that Customer 10 incurred expenses totaling $900 for supplies, thus falsely reporting that Customer 10  earned a profit of $13,666 for babysitting.

80.    As a result, the Kwik Services preparer reported an inflated total income amount of $13,666 on Customer 10's tax return, thereby claiming an inflated EITC in the amount of

$5,090.  By claiming this inflated income and EITC, the preparer claimed a bogus refund of $4,689 on Customer 10's 2019 tax return. The preparer did not review the completed tax return with Customer 10 but only provided Customer 10 with the expected amount of her refund.

**Customer 11**

81.     Customer 11 of Bartow, Florida had her 2019 federal income tax return prepared by a preparer at the Kwik Services store in Winter Haven, Florida.  Customer 11 went to Kwik Services because the store advertised an advance payment or loan of the tax refund.  Customer 11 was employed in the food industry in 2019.  Customer 11 did own a business or perform any work outside of her jobs. Customer 11 provided the preparer with her Forms W-2 and no other documents.

82.     On the Schedule C attached to the return, the preparer falsely reported that Customer 11 owned or operated a "health care services" business through which she received $7,314 in sales or gross receipts and incurred $180 in expenses for a phone. Thus, the Kwik Services preparer falsely reported that Customer 11 earned a profit of $7,134 through this non-existent business.  Customer 11 has never provided any home health care services and was unaware that the preparer reported this on her tax return.  The preparer did not review the completed tax return with Customer 11.

83.     As a result, the Kwik Services preparer reported an inflated total income amount of $15,666 on C Customer 11's tax return, thereby claiming an inflated EITC in the amount of $5,828.  By claiming this inflated income and EITC, the preparer claimed a bogus refund of $6,719 on Customer 11's 2019 tax return.

**Customer 12**

84.     Customer 12 of Winter Haven, Florida had her 2019 federal income tax return prepared by a preparer at the Kwik Services store in Winter Haven, Florida.  Customer 12 was employed in 2019 and also did some hairstyling and made and sold wigs outside of her employment.  Customer 12 provided the preparer with copies of her Forms W-2 from her jobs, the social security cards and birth certificates for herself and her children, and her identification.

85.     In 2019, Customer 12 received $3,805 through her employment.  Customer 12 earned between $9,000 and $10,000 through hairstyling and wig making, and incurred expenses of between $6,000 to $7,000, primarily related to the wigs.  Customer 12 provided the preparer with copies of her calendar book and receipts showing her income and expenses.

86.     On the tax return, the preparer did not report any of the income from Customer 12's employment despite being provided with copies of the Forms W-2.  On the Schedule C attached to the return, the preparer falsely reported that Customer 12 received $15,487 in income from her hairstyling and wig making, and did not report any of the expenses that Customer 12 incurred.

87.     As a result, the Kwik Services preparer reported an inflated total income amount of $15,487 on Customer 12's tax return.  In addition, despite Customer 12 supporting her children primarily through social security and government benefits, as discussed in paragraphs 96-97, *infra*, the preparer claimed an inflated EITC in the amount of $6,469 and a bogus refund of $6,065 on Customer 12's 2019 tax return.

88.     The preparer did not review the completed tax return with Customer 12 but only provided Customer 12 with the expected amount of her refund. The preparer charged Customer 12 $900 to prepare the tax return, when the original quote provided to Customer 12 was

hundreds of dollars less.  Customer 12 questioned the high fee, and the preparer told her that it
was due to various software and bank fees.  However, Customer 12 saw on the copy of her tax
return that she received that the software and bank fees totaled only around $43.

**Customer 13**

89.     Customer 13 of Kissimmee, Florida had her 2019 federal income tax return
prepared by a preparer at the Kwik Services store in Winter Haven, Florida.  Customer 13 was
employed in 2019 and also owned her own business to provide elder care.  Customer 13 also
received child support, social security income, and other government financial aid for her five
children.  Customer 13 provided the preparer with copies of her Forms W-2 from her jobs, social
security card, birth certificate, and identification.  Using apps on her phone, Customer 13 showed
the preparer her income and expenses related to her elder care business.

90.     In 2019, Customer 13 received $2,222 through her employment, and $535 per
week through her elder care business (or around $27,820 for the year).

91.     On the tax return, the preparer did not report any of the income from Customer
13's employment despite being provided with copies of the Forms W-2.  On the Schedule C
attached to the return, the preparer falsely reported that Customer 13 received $14,045 in income
through her elder care business, and incurred expenses of $35 for taxes and licenses and$384 for
a cell phone. Thus, the preparer falsely reported that Customer 13's profit from her elder care
was $13,626, far less than she actually earned.

92.     By underreporting Customer 13's income from her business and her employment,
the Kwik Services preparer reported a bogus total income amount of $14,045 on Customer 13's
tax return, and a falsely inflated EITC in the amount of $5,704.  The preparer claimed a bogus
refund of $5,303 on Customer 13's 2019 tax return.  The preparer did not review the completed

tax return with Customer 13 and did not tell Customer 13 how much she was charged to have the tax return prepared, as the fee was taken from the refund.

**Intentionally Claiming an Improper Filing Status and Bogus Dependents**

93.    The Defendants prepare tax returns reporting false filing status.  Specifically, Head of Household filing status is claimed on customers' tax returns to increase the amount of the customers' standard deduction, when the Defendants know that the customer does not qualify for Head of Household filing status.

94.    The Defendants file separate returns for married couples who are not living apart, improperly using the "Head of Household" or "Single" filing status, both of which are unavailable to married couples living together.  Often, this is an attempt to increase the claimed EITC; a qualifying couple with at least two children who, together, might otherwise receive a single EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each unlawfully receive a refund of $3,000 or more, by both falsely claiming Head of Household or single status and each claiming at least one dependent.

95.    Additionally, the Defendants claim dependents who do not actually qualify as dependents on customers' tax returns, and then claim Head of Household filing status to increase the customers' refunds through both the false filing status and fraudulent EITC claim based on the bogus dependents.

**Customer 12 (continued)**

96.    As described in paragraphs 84-88, *supra*, Customer 12 of Kissimmee, Florida had her 2019 federal income tax return prepared by a preparer at the Kwik Services store in Winter Haven, Florida.  In 2019, Customer 12 received $3,805 through her employment and around $3,000 doing some hairstyling and making and selling wigs.  Customer 12's three children lived

with her in 2019; the children's father is deceased, and Customer 12 supports the children using $11,508 in social security income she received related to her son, and other government financial support.

97.    On the tax return, the preparer falsely claimed all three of Customer 12's children as dependents.  The preparer also claimed related Additional Child Tax Credits.  As a result of improperly claiming these dependents and the related child tax credits, the Kwik Services preparer claimed an inflated EITC in the amount of $6,469 and a bogus refund of $6,065 on Customer 12's 2019 tax return.

### Customer 8 (continued)

98.    As described in paragraphs 70-73, *supra*, Customer 8 Winter Haven, Florida had her 2015 federal income tax return prepared at the Kwik Services store in Auburndale, Florida. Customer 8 lived with her sister and brother-in-law in 2015, who provided the majority of the support for the household. Customer 8's sister and brother-in-law also had their 2015 tax returns prepared at Kwik Services.

99.    On Customer 8's 2015 tax return, the preparer falsely reported Head of Household filing status, despite the preparer knowing that Customer 8 did not provide the majority of the financial support for the household.  According to Customer 8, the preparer falsely reported Head of Household on not only her tax return, but on the separate tax returns of her sister and brother-in-law too, despite knowing that they all lived together in 2015 and that her sister and brother-in-law were married. By falsely claiming Head of Household filing status, the preparer falsely inflated the refund claimed on Customer 8's 2015 tax return.

**Customer 5 (continued)**

100.    As described in paragraphs 53-58, *supra*, Customer 5 of Winter Park, Florida had her 2014 and 2015 federal income tax returns prepared at the Kwik Services store in Casselberry.

101.    On Customer 5's 2014 tax return, the preparer falsely claimed Customer 5's grandson as a dependent, even though the preparer knew that the grandson spent the majority of the year living with his mother, and that the grandson's mother also primarily supported him financially. By falsely claiming this bogus dependent and reporting a fabricated business loss, the preparer claimed a fabricated EITC in the amount of $4,008, a fabricated Child Tax Credit, and a bogus refund of $7,166 on Customer 5's 2014 tax return.

102.    On Customer 5's 2015 tax return, the preparer again falsely claimed Customer 5's grandson as a dependent, even though the preparer knew that the grandson spent the majority of the year living with his mother, and that the grandson's mother also primarily supported him financially.  By falsely claiming this bogus dependent and reporting a fabricated business loss, the preparer claimed a fabricated EITC in the amount of $3,407, a fabricated Child Tax Credit, and a bogus refund of $5,242 on Customer 5's 2015 tax return.

**Customer 1 (continued)**

103.    As described in paragraphs 28-34, *supra*, Customer 1 of Lakeland, Florida had his 2015 and 2016 federal income tax returns prepared at the Kwik Services store in Lakeland. Customer 1 was married in 2015 and 2016 and informed the preparers of his tax returns that he was married and that his wife was unemployed.  On both the 2015 and 2016 tax returns, the preparers falsely claimed Head of Household filing status.

**Bogus Schedule A Deductions**

104.    The Defendants prepare tax returns reporting bogus itemized deductions on Form Schedule A, "Itemized Deductions," to improperly or fraudulently reduce customers' taxable income.

105.    For example, the Defendants prepare tax returns for customers that include Forms Schedule A making false claims for purported unreimbursed employee business expenses. Section 162 of the Internal Revenue Code governs trade or business expenses.  The Defendants often claim deductions for fabricated, fraudulently inflated, and/or non-qualifying business expenses, particularly for purported business miles driven by customers.  The Defendants ask customers whether they incurred expenses for such personal expenditures such as rent, cell phones, and clothing, without explaining to customers that these expenses are actually non-deductible.  If the customer responds that they had such expenses, the Defendants then report these non-deductible expenses as deductible employee business expenses in amounts that the Defendants fabricate in order to maximize the customer's refund.  In instances where customers do have actual qualifying expenses, such as for charitable contributions, the Defendants report a falsely inflated amount of the expense that the customer incurred, to improperly increase the tax refund claimed on the return.

**<u>Customer 14</u>**

106.    For example, Customer 14 of Kissimmee, Florida had his 2015 federal income tax return prepared at the Kwik Services store located in Kissimmee, Florida. In 2015, Customer 14 worked at a Marriott hotel and received wages totaling $59,916.

107.    On the Schedule A attached to the tax return, the Kwik Services preparer falsely reported that Customer 14 incurred unreimbursed employee business expenses in the amount of

$33,657, or over 56% of his wages. The preparer reported on the filed tax return that Customer

14 incurred expenses for shoes ($175), a cell phone ($987), and uniforms ($225).  The remaining

$32,270 in bogus expenses were not categorized on the tax return.  As a result of these fabricated

expenses, the Kwik Services preparer claimed a bogus refund of $6,418 on Customer 14's 2015

tax return.

**Customer 15**

108.    Customer 15 of Mount Dora, Florida had his 2015 federal income tax return

prepared at the Kwik Services store located in Kissimmee, Florida. In 2015, Customer 15 also

worked at a Marriott hotel and received wages totaling $46,212.

109.    On the Schedule A attached to the tax return, the Kwik Services preparer falsely

reported that Customer 15 incurred unreimbursed employee business expenses in the amount of

$23,455, or over 50% of his wages. The preparer reported on the filed tax return that Customer

15 incurred expenses for shoes ($276), a cell phone ($1,243), and uniforms ($288).  The

remaining $21,648 in bogus expenses were not categorized on the tax return.  As a result of these

fabricated expenses, the Kwik Services preparer claimed a bogus refund of $3,447 on Customer

15's 2015 tax return.

**Customer 16**

110.    Customer 16 of New Haven, Connecticut had his 2015 federal income tax return

prepared at the Kwik Services store located in Kissimmee, Florida. In 2015, Customer 16 also

worked for the City of New Haven and State of Connecticut and received wages totaling

$63,433.

111.    On the Schedule A attached to the tax return, the Kwik Services preparer falsely

reported that Customer 16 incurred unreimbursed employee business expenses in the amount of

$33,165, or over 52% of his wages. The preparer reported on the filed tax return that Customer 16 incurred expenses for shoes ($221), a cell phone ($675), and uniforms ($352). The remaining $31,917 in bogus expenses were not categorized on the tax return. As a result of these fabricated expenses, the Kwik Services preparer claimed a bogus refund of $7,228 on Customer 16's 2015 tax return.

**Customer 17**

112.    Customer 17 of Land O Lakes, Florida had his 2015 federal income tax return prepared at the Kwik Services store located in Kissimmee, Florida. In 2015, Customer 17 received wages totaling $44,209.

113.    On the Schedule A attached to the tax return, the Kwik Services preparer falsely reported that Customer 17 incurred unreimbursed employee business expenses in the amount of $30,335, or over 68% of his wages. The preparer reported on the filed tax return that Customer 17 incurred expenses for shoes ($175), a cell phone ($785), and uniforms ($354). The remaining $29,021 in bogus expenses were not categorized on the tax return. As a result of these fabricated expenses, and a fabricated education credit discussed in paragraph 129, *infra*, the Kwik Services preparer claimed a bogus refund of $3,145 on Customer 17's 2015 tax return.

**Customer 18**

114.    Customer 18 of Columbia, South Carolina had her 2015 federal income tax return prepared at the Kwik Services store located in Winter Garden, Florida. In 2015, Customer 18 worked at a dental office and received wages totaling $45,981.

115.    On the Schedule A attached to the tax return, the Kwik Services preparer falsely reported that Customer 18 incurred unreimbursed employee business expenses in the amount of $21,797, or over 47% of her wages. The preparer reported on the filed tax return that Customer

18 incurred expenses for "work shoes" ($1,908), "work clothes" ($2,584), and dry cleaning ($2,411). The remaining $14,894 in bogus expenses were not categorized on the tax return. As a result of these fabricated expenses, the Kwik Services preparer claimed a bogus refund of $3,236 on Customer 18's 2015 tax return.

### **Customers 19 and 20**

116.    Customers 19 and 20 of Winter Garden, Florida had their 2015 federal income tax return prepared at the Kwik Services store located in Winter Garden, Florida. In 2015, Customers 19 and 20 were employed at a beverage distributor and a school district and received wages totaling $67,501.

117.    On the Schedule A attached to the tax return, the Kwik Services preparer falsely reported that Customers 19 and 20 incurred unreimbursed employee business expenses in the amount of $20,650. The preparer reported on the filed tax return that Customers 19 and 20 incurred expenses for "work shoes" ($502), "work clothes" ($1,811), and dry cleaning ($3,418). The remaining $14,919 in bogus expenses were not categorized on the tax return.

118.    The preparer also falsely claimed non-qualifying expenses as "other" expenses on the Schedule A. The preparer falsely claimed a cell phone expense in the amount of $3,618, and an expense for "surgery payments" in the amount of $8,013. The "surgery payments" expense was not properly reported as a medical expense, ostensibly because of the limitation on the amount of medical expenses that may be claimed as a deduction.

119.    As a result of these fabricated and non-qualifying expenses, the Kwik Services preparer claimed a bogus refund of $5,030 on the 2015 tax return of Customers 19 and 20.

**Reporting False Tax Withholdings Far Exceeding Amounts Actually Withheld
and Reported on Forms W-2**

120.    The Defendants prepare tax returns on which they falsely report the amount of

taxes withheld from customers' income far in excess of the taxes actually withheld as reported

on Forms W-2 issued to the customers by their employers.

121.    Employers are required to compute and withhold from their employees' wages

federal income, social security, and Medicare taxes.  At the end of a tax year, the amount

withheld from an employee's wages is a fixed and certain number.  The final amount withheld is

typically reported on a Form W-2.  The Form W-2 is sent to the taxpayer from the employer and

later filed by the taxpayer or his tax preparer along with the tax return.

122.    The Defendants disregard the federal tax withholdings reported on the Form W-2

and instead report a far larger amount on the tax return.  By falsely claiming that a larger amount

of tax was withheld from customers' income, the Defendants falsely claim a larger refund of

taxes allegedly withheld.  Fabricating the withholding amounts reported on customers' tax

returns in contravention of the amounts reported on customers' Forms W-2 provided to the

Defendants constitutes outright fraud and is a serious obstruction of tax administration.

**<u>Customer 21</u>**

123.    For example, Customer 21 of Lakeland, Florida, had his 2015 federal income tax

return prepared at the Kwik Services store in Lakeland.  Customer 21 provided the preparer with

his driver's license and a copy of his Form W-2 from his job.  The Form W-2 stated that

Customer 21's employer withheld $4,569 in federal income tax from Customer 21's wages.

124.    The Kwik Services preparer falsely reported on Customer 21's 2015 tax return

that Customer 21's employer withheld $5,569 in taxes.  By falsely reporting an additional $1,000

in taxes withheld, the preparer claimed a bogus refund of $2,096 ($1,000 more than should have been claimed).  The preparer charged Customer 21 $515 to prepare this tax return.

**Bogus Education Credits**

125.    The Defendants, and the tax return preparers acting at their direction or with their knowledge and consent, also claim bogus education expenses and falsely claim refundable education credits, including the American Opportunity education credit, on customers' federal income tax returns.  Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability. The Defendants, and the tax return preparers acting at their direction or with their knowledge and consent, claim false education credits on the tax returns of customers who did not attend college and had no qualifying education expenses, in order to reduce their customers' taxable income and generate a larger bogus refund.

126.    Educational institutions prepare and submit to the IRS, and provide a copy to the student, an IRS Form 1098-T to show qualifying tuition expenses billed to students and the amounts of any scholarships or grants provided to students.

127.    In 2018, the Defendants prepared and filed 31 tax returns that claimed education credits; of these 31 tax returns, 22 claimed tuition expenses for which no 1098-T was issued or in amounts that did not match the amounts reported on the Forms 1098-T provided to the IRS.  In 2019, the Defendants prepared and filed 28 tax returns that claimed education credits; of these 28 tax returns, 18 claimed tuition expenses for which no 1098-T was issued or in amounts that did not match the amounts reported on the Forms 1098-T provided to the IRS.  In 2020, the Defendants prepared and filed 36 tax returns that claimed education credits; of these 36 tax returns, 24 claimed tuition expenses for which no 1098-T was issued or in amounts that did not match the amounts reported on the Forms 1098-T provided to the IRS.  In 2021, the Defendants

prepared and filed 23 tax returns that claimed education credits; of these 23 tax returns, 14 claimed tuition expenses for which no 1098-T was issued or in amounts that did not match the amounts reported on the Forms 1098-T provided to the IRS.

**Customer 9 (continued)**

128.    As discussed in paragraphs 74-77, *supra*, Customer 9 her 2019 federal income tax return prepared by a preparer at the Kwik Services store in Winter Haven, Florida.  Customer 9's son attended college in 2019, and his expenses were covered by grants.  Customer 9 provided this information to the preparer. However, despite knowing that Customer 9 did not incur any education-related expenses, the Kwik Services preparer falsely reported on the Form 8863 attached to the tax return that Customer 9 incurred education-related expenses in the amount of $4,000.  The preparer then claimed a bogus American Opportunity education credit in the amount of $1,000 on the tax return.  As a result of reporting this fabricated education credits, and falsely inflating Customer 9's income and claimed EITC, the preparer claimed a bogus refund in the amount of $6,036 on Customer 9's 2019 tax return.

**Customer 17 (continued)**

129.    As discussed in paragraphs 112-113, *supra*, Customer 17 had his 2015 federal income tax return prepared at the Kwik Services store located in Kissimmee, Florida.  The Kwik Services preparer falsely reported on the Form 8863 attached to the tax return that Customer 17 incurred education-related expenses for his son in the amount of $2,558.  The preparer then claimed a bogus American Opportunity education credit in the amount of $856 and a bogus education credit in the amount of $343 on the tax return.  As a result of reporting the fabricated education credits, and falsely claiming itemized deductions on the Form Schedule A, the Kwik Services preparer claimed a bogus refund of $3,145 on Customer 17's 2015 tax return.

**Customer 22**

130.    Customer 22 of Lakeland, Florida had her 2015 federal income tax return prepared at the Kwik Services store in Lakeland.  Customer 22 went to Kwik Services after seeing yard signs advertising that Kwik Services provided an advance payment of the anticipated tax refund to customers.  However, when she went to Kwik Services to have her tax return prepared, Welch falsely told Customer 22 that Customer 22 could not receive an advance payment on her refund because Customer 22 missed an IRS-imposed deadline to file a tax return and be eligible for an advance payment on the refund (the IRS imposes no such deadline and does not offer an advance payment on tax refunds).

131.    Customer 22 worked as a medical billing clerk in 2015.  Customer 22 did not attend college in 2015 and did not incur any education-related expenses.

132.    The Kwik Services preparer falsely reported on the Form 8863 "Education Credits (American Opportunity and Lifetime Learning Credits)" attached to Customer 22's 2015 tax return that Customer 22 incurred education-related expenses in the amount of $4,000.  The preparer then claimed a bogus American Opportunity education credit in the amount of $1,000 and a bogus nonrefundable education credit in the amount of $1,500 on the tax return.  As a result of reporting these fabricated education credits, the preparer claimed a bogus refund in the amount of $5,906 on Customer 22's 2015 tax return.

### Unconscionable and Undisclosed Fees

133.    The Defendants charge unconscionably high fees to prepare tax returns, which are typically charged without customers' knowledge.  The Defendants charge these high fees to prepare and file false tax returns with unnecessary and bogus forms and schedules attached, when they should have honestly prepared a basic Form 1040 tax return.

134.    The Defendants intentionally deceive customers regarding the fees charged for the preparation of tax returns.  The Defendants do not disclose the full amount of the fee and, when having the customer sign forms showing the fee, cover the fee with a hand or a piece of paper and do not explain to the customer what the customer is signing.

135.    The Defendants charge additional fees for each form and schedule (such as a Schedule C or a Form 8863 for an education credit) attached to the Form 1040 tax return. These additional fees result in a total tax return preparation fee much higher than the amount advertised.

136.    The high fees charged (and the fee structure, which encourages the addition of unnecessary and often improper forms and schedules to the Form 1040) are a strong incentive for the Defendants to prepare and file false or fraudulent tax returns claiming excessive refunds based on bogus claims and associated forms and schedules.

137.    Because the Defendants target low-income individuals, the high fees frequently can pose a significant financial hardship for customers.  Customers may be required to pay back the improper refunds that they receive.  Because the Defendants deduct their high fees directly from her customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees.  Thus, customers are then out-of-pocket the high fees that the Defendants charged.  Additionally, fees are unconscionable for the basic – albeit fraudulent – tax returns being prepared for these customers, who are often eligible for free tax return preparation and electronic filing elsewhere.

138.    The Defendants also routinely and intentionally fail to disclose to customers all fees charged.  The Defendants present forms to customers to sign, including a form acknowledging the fees charged, without allowing the customer to closely review or understand

35

the forms they are signing.  Alternatively, the Defendants tell customers one amount for fees and then later increase the fees without the customers' knowledge or consent.  Customers are often surprised to learn that the refund requested on their return is hundreds if not thousands of dollars more than the refund amount that they received after the fees were deducted.

139.    The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund.  By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the customers pay to have their tax return prepared. Customers typically do not discover that the fees charged are much more than the customers anticipated for the preparation of their tax return until the customers receive a refund that is much less than quoted by the tax return preparer, after the Defendants subtracted their high fees.

140.    The Defendants' practice of charging unconscionable and undisclosed fees interferes with the administration and enforcement of the Internal Revenue laws. Such behavior erodes consumer confidence in tax return preparers and dissuades taxpayers from seeking professional assistance with the preparation of their federal tax returns.

**Failure to Provide Customers with Copies of their Completed Tax Returns
in Violation of 26 U.S.C. § 6107(a)**

141.    The Defendants fail to provide customers with copies of their completed tax returns.  The completed tax return, filed with the IRS, shows the refund that the Defendants are claiming for the customer.  For example, a customer who is provided a copy of a tax return showing the actual tax refund claimed is able to determine the amount of fees that the Defendants charged by subtracting the amount of the refund that the customer actually receives from the amount of the refund claimed on the tax return.  The Defendants' failure to provide a

copy of a customer's completed tax return is part of the strategy to conceal the actual fees from her customers.

142.     Failing to provide a customer with a copy of the completed tax return also violates 26 U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of [a tax return or claim for refund] to the taxpayer not later than the time such return or claim is presented for such taxpayer's signature."

143.     Customers who do receive a copy of the tax return often receive only the first two pages of the Form 1040, but not the other forms filed with the return, such as Forms Schedule C, Forms Schedule A, and Forms 2106, "Employee Business Expenses."  This is because the Defendants make false claims on these forms and, to conceal the claims from customers, do not provide customers with copies of these completed forms.

### Failure to Identify the Actual Preparer of Customers' Tax Returns in Violation of 26 U.S.C. §§ 6695(b) and 6695(c)

144.     The Defendants, and those acting at their direction, prepare tax returns for customers on which they did not identify themselves as the paid preparer.

145.     A tax return preparer who fails to sign a tax return that he or she prepares violates 26 U.S.C. § 6695(b).  A tax return preparer, or employer of a tax return preparer, who fails to report an identifying number of the tax return preparer or the employer on a tax return that the preparer or an employee prepares, violates 26 U.S.C. § 6695(c).

146.     Failing to identify themselves as the paid preparers on tax returns is part of the Defendants' attempts to conceal their tax return preparation activities from government investigators.

**Harm Caused by the Defendants**

147.    The Defendants' preparation of false and fraudulent tax returns at their tax return preparation stores, false and misleading statements directed to customers and potential customers, and culture favoring volume and ill-gotten profits over accuracy and integrity have harmed the public and the United States Treasury. These practices harm the public because the Defendants and many of their preparers prepare false or fraudulent tax returns that understate their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

148.    Defendants' conduct (and that of their preparers) harms the United States Treasury by causing lost tax revenue.

149.    During the IRS's investigation of the Defendants, the IRS examined at least 43 tax returns for tax years 2014 and 2015 prepared by Welch or tax return preparers at her tax preparation stores.  The IRS made adjustments to all 43 tax returns, with a total tax deficiency of $179,000, or an average tax deficiency of $4,200 per examined return.

150.    The Defendants' customers have also been harmed because they relied on the Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest.

151.    Customers are harmed by the unconscionably high and frequently undisclosed fees tied to anticipated tax refunds. These fees are subtracted from the erroneous refunds that result from the false or fraudulent tax return preparation perpetrated by the Defendants and their employees acting at their direction and with their knowledge and consent. When the IRS

conducts audits or examinations of customers and seeks repayment of these erroneous refunds, the customers are liable for the repayment of those refunds. Not only do customers face the hardship associated with repayment of erroneous refunds resulting from the Defendants' greed at others' expense, but customers may also have to repay the portion of the refund that the Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and filed by the Defendants, and their employees acting at their direction and with their knowledge and consent.

152.    The Defendants' misconduct further harms the United States and the public by requiring the IRS to devote some of its resources to detecting her false claims on tax returns and assessing and collecting lost tax revenues from the Defendants' customers.  Consequently, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

153.    The Defendants' conduct also causes intangible harm to honest tax return preparers who unfairly lose business to the Defendants due to their willingness to break the law. Customers often have their returns prepared at the Defendants' tax preparation stores because they promise the maximum refund, and deliver by fabricating claims and deductions on customers' tax returns.

154.    Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

155.    The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their

illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers.  An injunction will serve the public interest because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

### Count I
### Injunction under 26 U.S.C. § 7407

156.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

a.    Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

b.    Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

c.    Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

d.    Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

e.    Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

157.    Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

158.    Karla R. Welch, as shown above in paragraphs 1 through 155, is a tax return preparer who, individually and through Karla R. Welch, LLC and Kwik Services, LLC, has repeatedly and continually prepared or submitted returns or portions of returns (or employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return. Karla R. Welch also advises, instructs, directs, and causes her preparers and employees to engage in tax fraud, and to prepare federal income tax returns asserting unreasonable, unrealistic, frivolous and fraudulent positions. Accordingly, Karla R. Welch knew (or should have known) of the unreasonable, unrealistic, frivolous and fraudulent positions.

159.    Karla R. Welch, and those acting in concert with her and at her direction, has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal tax returns that understate her customers' liabilities based on unrealistic, frivolous and reckless positions. Karla R. Welch, through the actions described above, also recklessly or intentionally disregards IRS rules or regulations.

160.    Karla R. Welch, and those acting in concert with her and at her direction, has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695. The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from claiming the EITC without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011).  Not only does Karla R. Welch fail to conduct proper due diligence or comply with the due diligence

requirements, but she also advises, encourages, and causes her preparers and employees to circumvent the due diligence requirements and to ignore or disregard the information provided by customers.

161.    Karla R. Welch's failure to comply with the due diligence requirements for the EITC violates Treasury Regulations and her willingness to falsify information to obtain the EITC for her customers shows a reckless and/or intentional disregard of IRS rules and regulations.

162.    Karla R. Welch, and those acting in concert with her and at her direction, has continually and repeatedly prepared federal income tax returns that claim the EITC for customers, where Karla R. Welch, and those acting in concert with her and at her direction, has not conducted, let alone documented, the required due diligence procedures.

163.    Karla R. Welch fails to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

164.    Karla R. Welch, Karla R. Welch, LLC and Kwik Services, LLC, and tax return preparers working at their direction, also fail to comply with 26 U.S.C. §§ 6695(b) and 6695(c), which require that a tax return preparer and a tax return preparation firm identify the actual paid preparer of the tax returns on all tax returns that the preparer prepares.

165.    Karla R. Welch's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

166.    Karla R. Welch's continual and repeated fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and thus is subject to an injunction under 26 U.S.C. § 7407.

167. Karla R. Welch, and those acting in concert with her and at her direction, has continuously and repeatedly guaranteed refunds to customers and guaranteed the allowance of tax credits, including but not limited to the EITC. This conduct falls within 26 U.S.C. § 7407(b)(1)(C), and thus is subject to an injunction under 26 U.S.C. § 7407.

168. If Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC are not enjoined from all tax preparation, they and those acting in concert with them and at their direction are likely to continue to prepare and file false and fraudulent tax returns.

169. Karla R. Welch's, Karla R. Welch, LLC's, and Kwik Services, LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Karla R. Welch's, Karla R. Welch, LLC's, and Kwik Services, LLC's interference with the proper administration of the internal revenue laws. Accordingly, Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC should be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

## Count II
## Injunction under 26 U.S.C. § 7408

170. Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

171. Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used

43

in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability. Under 26 U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

172.    Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, through the actions detailed above in paragraphs 1 through 155, caused the presentation and preparation of false, fraudulent, and abusive tax returns and other documents. Karla R. Welch prepares, assists, and/or advises with respect to the presentation and preparation of federal tax returns for customers that she knows will understate their correct tax liabilities, because Karla R. Welch knowingly prepares, assists, and/or advises with respect to the presentation and preparation of returns claiming bogus expenses and deductions. Karla R. Welch procured and assisted the preparation of false and fraudulent tax returns by filing and encouraging the filing of tax returns they knew were false or fraudulent, and by employing, training, and supervising tax return preparers engaging in tax fraud. Karla R. Welch has thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

173.    Karla R. Welch is likely to continue violating the law absent an injunction. Tax return preparation is Karla R. Welch's primary source of revenue. To maximize that income, Karla R. Welch prepares, and instructs and directs her preparers and employees to prepare, false or fraudulent returns. That conduct, in turn, gives Karla R. Welch a competitive edge over law-abiding preparers. It also provides a means for Karla R. Welch to further exploit her customers by charging them unconscionably high fees, while Karla R. Welch fraud simultaneously and callously exposes her customers to possible civil and criminal liability.

174.    If the Court does not enjoin Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701.  The preparation of tax returns claiming improper expenses and deductions by Karla R. Welch, and those acting in concert with her and at her direction, is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

175.    Section 7402 of the Internal Revenue Code authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

176.    Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, through the actions described above in paragraphs 1 through 155, including, but not limited to, intentionally understating their customers' tax liabilities and charging unconscionable and undisclosed fees for the preparation of federal tax returns that intentionally understate their customers' tax liabilities, have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

177.    Unless enjoined, Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, and those acting in concert with them and at their direction, are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC are not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer irreparable injury by providing federal income tax refunds to individuals not entitled to receive them.

178.    While the United States will suffer irreparable injury if Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC are not enjoined, the Defendants will not be harmed by being compelled to obey the law.

179.    Enjoining Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop the Defendants' illegal conduct and the harm it causes the United States and the Defendants' customers.

180.    The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

**Count IV**
**Disgorgement under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

181.    Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

182.    Karla R. Welch's, Karla R. Welch, LLC's, and Kwik Services, LLC's conduct, described above in paragraphs 1 through 155, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them.  Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC have unjustly profited at the expense of the United States by subtracting their exorbitant fees from those refunds.

183.    Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC are not entitled to these ill-gotten gains. But for the Defendants' conduct, these bogus refunds would not have been issued.

184.    The Court should enter an order under 26 U.S.C. § 7402(a) requiring Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC to disgorge to the United States the gross receipts (in the form of fees subtracted from customers' tax refunds) that Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC received for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

A.    That the Court find that Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.    That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC from acting as federal tax return preparers;

C.    That the Court find that Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D.    That the Court find that Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

     E.     That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, and all those in active concert or participation with them, from:

     (1)     acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

     (2)     preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

     (3)     owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

     (4)     training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

     (5)     maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

     (6)     engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

     (7)     engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

     F.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC to immediately and permanently close all tax return preparation stores that they own directly or through any other entity, and whether those stores do business as Kwik Services or under any other name;

     G.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order appointing a receiver to sell all of the hard assets, such as computers (after any and all taxpayer

information has been removed), electronics, and furniture, for all tax return preparation stores that Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC own directly or through any other entity, and whether those stores do business as Kwik Services or under any other name;

      H.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Karla R. Welch and Society Financial Solutions, LLC, directly or through any other entity, from assigning, transferring, or selling any franchise agreement, independent contractor agreement, or employment contract related to Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, or any other tax return preparation business to which they or any entity under their control is a party;

      I.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, directly or through any other entity, from: (1) selling to any individual or entity a list of customers, or any other customer information, for whom Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC and any other business or name (including but not limited to Kwik Services) through which they, or those acting at their direction, have at any time since 2012 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC or any other business or entity through which Karla R. Welch prepares tax returns or owns or franchises a tax return preparation business, a list of customers or any other customer information for customers for whom Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, and any other business or name (including but not limited to Kwik Services) through which Karla R. Welch, or those acting at her direction, have at any time since 2012 prepared a tax return; and (3) selling to any individual

or entity any proprietary information pertaining to Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, and any other business or name (including but not limited to Kwik Services) through which Karla R. Welch, or those acting at her direction, have at any time since 2012 prepared a tax return;

J.    That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC to disgorge to the United States the gross receipts (the amount of which is to be determined by the Court) that Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC received (in the form of fees subtracted from customers' tax refunds) for the preparation of tax returns that make or report grossly incompetent, negligent, reckless, and/or fraudulent claims, deductions, credits, income, expenses, or other information that results in the understatement of taxes, prepared since 2012 by Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, and at any tax preparation store franchised, owned, or managed by Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC;

K.    That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC to contact, within 30 days of the Court's order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, and their managers, employees, and tax return preparers (including but not limited to those doing business under the name Kwik Services) prepared federal tax returns or claims for a refund from 2012 and continuing through this litigation to inform them of the permanent injunction entered against them, including sending a copy of the order of permanent injunction but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

L.    That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC, and their managers, employees, and tax return preparers (including but not limited to those doing business under the name Kwik Services) prepared federal tax returns or claims for a refund since 2012;

M.    That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, address, e-mail address, and telephone number all principals, officers, managers, franchisees, employees, and independent contractors of Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC since 2012;

N.    That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an injunction requiring Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC to provide a copy of the Court's order to all principals, officers, managers, franchisees, employees, and independent contractors of Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC within 15 days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC provided a copy of the Court's order;

O.    That the Court retain jurisdiction over Karla R. Welch, Karla R. Welch, LLC, and Kwik Services, LLC and over this action to enforce any permanent injunction entered against them;

P.    That the United States be entitled to conduct discovery to monitor Karla R.

Welch's, Karla R. Welch, LLC's, and Kwik Services, LLC's compliance with the terms of any

permanent injunction entered against them; and

Q.    That the Court grant the United States such other and further relief, including

costs, as is just and reasonable.

February 2, 2022                    ROGER B. HANDBERG
                                    United States Attorney

                                    DAVID A. HUBBERT
                                    Deputy Assistant Attorney General

                                     s/ Daniel A. Applegate
                                    DANIEL A. APPLEGATE
                                    SAMUEL P. ROBINS
                                    Trial Attorneys, Tax Division
                                    U.S. Department of Justice
                                    P.O. Box 7238, Ben Franklin Station
                                    Washington, D.C. 20044
                                    Telephone: (202) 353-8180
                                    Fax: (202) 514-6770
                                    Daniel.A.Applegate@usdoj.gov